## Richmond

NORWOOD B. RICHARDSON, JR. v. JOHN E. CHARLES.

November 30, 1959.

Record No. 5012.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*E. Pryor Wormington* (*Rixey & Rixey,* on brief), for the plaintiff in error.

*Herbert K. Bangel* (*Bangel, Bangel & Bangel,* on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

John E. Charles instituted an action at law against Norwood B. Richardson, Jr. and Arthur B. Graves for damages resulting from personal injuries he sustained when the two cars operated by Richardson and Graves were involved in an accident on December 10, 1957. Charles was an occupant of the vehicle driven by Richardson. On June 12, 1958, a trial was had. The court overruled motions of both defendants to strike plaintiff's evidence at the conclusion of plaintiff's evidence and also at the conclusion of all the evidence. The jury returned a verdict against defendant Richardson for the sum of $9,000 and found in favor of defendant Graves. Richardson moved to set aside the verdict against him and enter final judgment on his behalf or in the alternative grant him a new trial, and Charles moved to set aside the verdict in favor of Graves. Both of these motions were overruled, and on October 21, 1958, judgment was entered on the verdict rendered. We granted defendant Richardson an appeal. No cross-error was assigned to the action of the court in sustaining the verdict in favor of defendant Graves and he is not here involved.

Richardson, a used car salesman for Tyree-Jones Motor Company in Portsmouth, sold Charles a 1954 Plymouth automobile for $600 cash on December 7, 1958. The car was to be painted and delivery of it was promised for the following Monday, December 9, 1958. On that day Charles made two trips to the dealer's place of business to get delivery of the vehicle. He was informed it was not ready, but that it would be in condition for delivery the next morning. He returned that morning which was Tuesday, December 10, 1958, and again he was advised by Richardson the car was not ready. In reply to a question relating to what conversation he had with Richardson on Tuesday morning, he testified: "* * * I said, 'You know, I need the automobile because I want to go to Virginia Beach to see about a job.' He said, 'I know it and I am sorry the car is not ready and you bought one from me.' He said, 'I will take you there.'" There was evidence that Richardson also had some business to attend to at Virginia Beach.

Each salesman of Tyree-Jones Motor Company had a day off or as Richardson expressed it a "floating" day to do "as he sees fit about calling on prospects." This was Richardson's day off. He secured a 1956 Ford from the lot and they proceeded toward Virginia Beach. They stopped on the way at a filling station where each had one drink

of liquor. When they arrived at the Beach, Charles transacted his business first, then Richardson went to Emrhae Motors to see a friend employed there and who was also associated with him in a radio business. The nature of Richardson's business was not made clear. They had lunch and proceeded back toward Portsmouth, which is west, on Route 58, also known as Virginia Beach Boulevard. Just before Richardson reached East Lane or Route 615, which runs north and south and intersects with Route 58, he was following close behind the vehicle operated by Graves. The distance between the two vehicles was two car lengths.

It was approximately 2:30 p. m. and raining hard. According to Richardson he and Charles wiped the windows which "smogged" from the inside. Traffic lights were at the intersection which would change from green to caution, then to red. Graves testified that it was his intention to make a right turn and proceed north on Route 615; that he turned on his blinker light indicating such a turn 150 feet from the traffic light which was green; that he had reduced his speed from 20 to 25 miles per hour to between 5 and 7 miles per hour and as he turned his wheels right while the light was still green he was struck by the vehicle operated by Richardson, and that his car was knocked north into Route 615. Richardson stated that he was driving between 20 and 25 miles per hour at the time and that he did not recall seeing Graves' signal for a right turn. His version of the accident was: "It looked to me as though he was planning to go through the light because I was watching the light myself, and I took it that he was trying to go through, and by the time he got there, the light changed and he stopped quickly, and I stopped and slid into the back of his car."

Shepherd L. Fulgham, a Princess Anne County police officer, was called to the scene of the accident. He testified Richardson acknowledged to him that the light was green; that he saw the right turn signal given by Graves' car; that he was following too close to the Graves vehicle; that when he applied his brakes he "slid" into it, and that he would take full responsibility for the accident as it was his fault. He also stated that Richardson pleaded guilty to a charge of reckless driving resulting from the accident.

Two questions are presented in this appeal. First, was the status of plaintiff, Charles, a passenger as a matter of law, or that of a guest as a matter of law; or should the issue have been submitted to the

jury? Second, did the court err in granting instruction C over the objection of defendant?

■ The court below ruled as a matter of law that Charles' status was that of a passenger, and the instructions offered were granted or refused on that basis. Defendant's position is that plaintiff was a guest passenger as a matter of law; or, in any event, the question of his status should have been submitted to the jury for a determination.

We find, as did the court below, no conflict in the evidence with regard to the business relationship between the litigants and the reasons plaintiff was an occupant in the vehicle operated by defendant at the time of the accident. That being the case, it was incumbent upon the trial court to rule as a matter of law upon plaintiff's status. *Davis* v. *Williams*, 194 Va. 541, 546, 74 S. E. 2d 58.

Section 8-646.1, 1957 Replacement Vol. 2, Code 1950, provides in part: "No person transported by the owner or operator of any motor vehicle as a guest *without payment for such transportation* * * * shall be entitled to recover damages against such owner or operator for death or injuries * * * unless such death or injury was caused or resulted from the gross negligence * * * of such owner or operator." (Italics supplied.)

In 5A Am. Jur., Automobiles and Highway Traffic, § 520, p. 559, it is stated:

"Payment for transportation need not be made in money; it is sufficient that the owner or operator is compensated in a substantial or business sense as distinguished from mere social benefit or nominal or incidental contribution to expenses. Payment may be an anticipated or prospective profit, or any return making it worth while to furnish the ride. The guest statute was not intended to deny a right of action for injuries suffered through negligence of the owner or operator of an automobile by one who is being transported for the benefit of the owner or operator, or for the benefit of both the passenger and the owner or operator. * * *"

We had occasion to consider Section 8-646.1, *supra*, in *Davis* v. *Williams, supra*. There we said:

"Apparently there is little disagreement among the decisions on the general principles governing the determination of guest status under the statutes of the various states wherein such statutes have been adopted. Concurrence is general that an incidental benefit resulting to the defendant from the transportation is not sufficient to enlarge the liability from guest to passenger. The benefit to the defendant

must be a consideration for the transportation. More than an incidental benefit must have induced the defendant to extend the ride. 10 A. L. R. 2d 1354. The benefits, in short, must be more than gratuitous gestures of reciprocal hospitality, or social amenities, extended without thought of bargaining for the transportation. *Mayer* v. *Puryear, supra.*" 194 Va., at page 546.

Later in *Dickerson* v. *Miller,* 196 Va. 659, 85 S. E. 2d 275, we stated:

"In considering whether a person is a paying passenger or guest passenger, the courts of the several states which have statutes similar to this section of our Code, are in general agreement as to the principles to be applied. See 5 Am. Jur., Automobiles, § 239, p. 634. With respect to 'payment' it is not necessary that the operator of the vehicle receive actual cash in return for the transportation supplied, since services or other benefits given by the occupant, if regarded by the parties as consideration inducing the offer of transportation, may be sufficient to entitle the occupant to the status of a paying passenger, as distinguished from a guest passenger." (citing cases) 196 Va., at page 662. See also *Hill Hardware Corp.* v. *Hesson,* 198 Va., 425, 429, 94 S. E. 2d 256.

In the present case the evidence shows that the trip from Portsmouth to Virginia Beach and return was motivated by the business transaction between plaintiff and defendant. Had it not been for the purchase and sale of the automobile which was not delivered to plaintiff as promised on Monday and then again on Tuesday, plaintiff would not have been a passenger in defendant's vehicle. Defendant knew that plaintiff desired delivery of the vehicle so that he could drive to Virginia Beach with reference to securing employment. Certainly this was an important mission. Defendant had defaulted in his obligation and it was a substantial benefit to him as well as his employer to furnish transportation to plaintiff in order to have a satisfied customer and to meet an obligation he recognized. The purpose of the trip was purely business and the fact that they had a social drink and dined together during the course of the trip does not change the complexion of it. The trial court properly ruled as a matter of law that plaintiff was a passenger and not a guest in defendant's automobile at the time of the accident.

Instruction C reads as follows:

"The Court instructs the jury that if you believe from the evidence that the defendant Norwood B. Richardson, Jr., was not keeping

a proper lookout on the occasion in question, he was guilty of negligence and if you believe from the evidence that such negligence was the sole proximate cause of the accident, you must find your verdict in favor of the defendant, Arthur B. Graves."

Defendant objected and excepted to this instruction on the ground that there was no evidence to the effect that he was not keeping a proper lookout. He argues that the evidence only shows that his negligence, if any, was by following too close behind the Graves vehicle.

Graves testified that he turned on his signal light indicating his intention to make a right turn about 150 feet from the traffic light which did not change from green, and that he had gradually reduced his speed from between 20 to 25 miles per hour to between 5 and 7 miles per hour when he was struck. On the other hand Richardson said he was two car lengths behind the Graves automobile, that the traffic light changed to red, and the Graves car stopped abruptly causing him to apply his brakes suddenly and skid into the rear of it. In regard to the signal light he stated: "I don't recall seeing it. I was watching the car ahead. Don't recall seeing a signal." In other words he saw the traffic light and the Graves automobile, but did not recall seeing the signal light blinking on it. The jury could resolve from this conflicting evidence that Richardson did not exercise a proper lookout under the circumstances then and there existing which might have prevented the accident. There was no error in granting Instruction C.

Accordingly, the judgment appealed from is affirmed.

*Affirmed*