UNITED STATES FIDELITY AND
GUARANTY COMPANY,
Plaintiff,

v.

John H. ROWE, Jr., Administrator of the
Estate of Larry Mitchell Rowe, Jerry
Rowe, an infant, Lloyd G. Rowe, Dallas
Eugene Hodge, an infant, William E.
Hodge, individually and t/a Powhatan
Marina, Miles S. Brooks and Frank C.
Carr, t/a Williamsburg Sporting Goods
and Hobby Shop, Miles S. Brooks, Frank
C. Carr, Defendants,

and

Harry H. Kanter and H. Lee Kanter, t/a
Kanter & Kanter, Intervenors.

John H. ROWE, Jr., Administrator of the
Estate of Larry Mitchell Rowe, Deceas-
ed, John H. Rowe, Jr., Jerry Rowe, Un-
der 21 years through his father and next
friend, John H. Rowe, Jr., Lloyd G.
Rowe, Plaintiffs,

v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY,
Defendant.

Civ. A. Nos. 4871, 4745.

United States District Court
E. D. Virginia,
Norfolk Division.

Feb. 8, 1966.

Baird, Crenshaw & Ware and Philip E. Landrum, Norfolk, Va., for United States Fidelity & Guaranty Co.

Kelsey & Rabinowitz, Norfolk, Va., for John H. Rowe and others.

Paul M. Lipkin, Norfolk, Va., for Kanter & Kanter and Dallas Eugene Hodge, and William E. Hodge, t/a Powhatan Marina.

Carneal, Smith & Anderson, Williamsburg, Va., Sutton & Causey, West Point, Va., for Brooks & Carr, t/a Williamsburg, Sporting Goods, etc.

H. Lee Kanter, Norfolk, Va., guardian ad litem for Dallas Eugene Hodge.

WALTER E. HOFFMAN, Chief Judge.

These consolidated actions involve the determination of the liability, if any, of the liability insurer of several judgment debtors whose personal liability has previously been adjudicated by this Court. Such personal liability arose from a motorboat accident which occurred on July 3, 1960, in the waters of Powhatan Creek which empties into the James River near Williamsburg, Virginia. This accident involved two outboard motorboats, one of which was owned by Miles S. Brooks and Frank Carr, trading as Williamsburg Sporting Goods and Hobby Shop. The boat had been placed by Brooks and Carr at the Powhatan Marina, a sole proprietorship owned by William E. Hodge, for the purposes of demonstration and sale. The boat was approximately 16 feet in length and was powered by a 75 horsepower outboard motor. At the time of the accident the boat was being operated by Dallas E. Hodge, the fourteen year old son of William E. Hodge, and the passengers were Larry Mitchell Rowe, John H. Rowe, Jr., Jerry Rowe and Lloyd G. Rowe. The other boat was operated by Ellen C. Burkhardt (now Mrs. Charles G. Rosson) whose interest is not involved in the present actions.

The accident resulted in serious injuries to the Rowes, with the resultant death of Larry Mitchell Rowe, and a libel was filed in their behalf on July 13, 1961. In due time the trial was conducted by District Judge Butzner who delivered his findings of fact and conclusions of law on July 25, 1963, in which he ruled that (1) the accident occurred approximately ¼ of a mile from the Powhatan Marina; (2) the accident was caused by the concurrent negligence of young Hodge and Mrs. Burkhardt (now Rosson); (3) Dallas Hodge was acting within the scope of his employment, and thus William Hodge was liable for the negligence of his son; (4) there was no partnership or joint venture between William E. Hodge and the partnership of Brooks and Carr; (5) the Rowes were not passengers for hire within the mean-

ing of 46 C.F.R. 24.10–3 and, therefore, Dallas Hodge was not required to have an operator's license; (6) since Dallas Hodge was a competent operator and his negligence was without the privity or knowledge of Brooks and Carr, the latter were entitled to limit their liability, pursuant to 46 U.S.C. § 183, to $600.00, the value of their wrecked boat. Separate judgments in the combined amount of $93,250.00 [1] were entered on August 23, 1963, in favor of the Rowes against the Hodges, Mr. and Mrs. Rosson, and Brooks and Carr, subject to the limitation of liability in favor of Brooks and Carr.

On appeal the Court of Appeals affirmed in part but reversed as to the limitation of liability granted to Brooks and Carr. Rowe v. Brooks, 329 F.2d 35 (4 Cir., 1964). The appellate court held that Brooks and Carr and William Hodge were in a joint venture and that the Rowes were "passengers for hire" on the Brooks and Carr boat. This conclusion was reached by use of the analogous automobile cases holding that prospective purchasers are "passengers" as distinguished from "guests" in regard to so-called "host-guest" statutes. Since the Rowes were passengers for hire, they were required to be piloted by a licensed operator under 46 C.F.R. 157.30–30. Finding that Brooks and Carr were charged with knowledge that Dallas Hodge was not a proper operator under these circumstances, the Court of Appeals held that Brooks and Carr were not free from negligence and thus were not entitled to limit their liability.

The insurance carrier for both the Williamsburg Sporting Goods and Hobby Shop and the Powhatan Marina, under separate policies, is the United States Fidelity and Guaranty Company (hereinafter referred to as U. S. F. & G.). U. S. F. & G. had assumed the defense of the Rowes' suit against Brooks and Carr without a reservation of rights but had not defended the Hodges. The respective policies were in effect at the time

of the accident. After the decision of the Court of Appeals in Rowe v. Brooks, supra, U. S. F. & G. filed in the Newport News Division of this Court a "complaint for interpleader and declaratory relief pursuant to Rule 22 FRCP" seeking a determination of its liability, if any, under the circumstances here involved. Soon thereafter the Rowes instituted a civil action in the Norfolk Division of this Court seeking judgment against U. S. F. & G. for the full amount of coverage on both liability policies. By agreement of all parties this Court transferred the U. S. F. & G. declaratory judgment action to the Norfolk Division and consolidated the two actions for trial pursuant to F.R.Civ.P. 42(a) since the immediate controversy in both suits pertained to the policy coverages. The law firm of Kanter & Kanter was permitted to intervene as a defendant in the declaratory judgment action and to file a counterclaim therein against U. S. F. & G. for $12,500.00 in legal fees and $292.48 in costs allegedly incurred in defending the Rowes' suit against the Hodges which U. S. F. & G. had declined to defend. These matters are now before the Court on the motions of all parties for summary judgment, there being no genuine issue of fact presented.

### The Brooks and Carr Policy

There are two primary questions in regard to this policy: (1) Did the holding of the Court of Appeals that the Rowes were "passengers for hire" place the Rowes within the policy exclusion in regard to "boats while used to carry passengers for a charge or while rented to others"? (2) Did U. S. F. & G. have a duty to defend the Hodges under the Brooks and Carr policy?

#### (1) The Policy Exclusion.

Under the terms of the insuring agreement U. S. F. & G. agreed:

"[T]o pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as dam-

---

1. The individual judgments were as follows: John H. Rowe, Jr., Administrator of the Estate of Larry Mitchell Rowe,

$30,000.00; John H. Rowe, Jr., $5,250.00; Jerry Rowe, $18,000.00; Lloyd G. Rowe, $40,000.00.

ages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."

The basic policy included a standard exclusion in regard to watercraft if the accident occurred away from the insured's premises. However, the effect of this exclusion was removed by endorsement number 5 which provided that the above exclusion would not apply to any accident due to the ownership, maintenance or use of any watercraft classified in the policy declarations. The declarations enumerated private boats with outboard motors exceeding ten horsepower. However, in endorsement number 6 it was stated that:

> "It is understood and agreed that this policy excluded [2] coverage for boats while used to carry passengers for a charge or while rented to others."

It is the effect of endorsement number 6 which is in dispute at present. Counsel for U. S. F. & G. argue that the Rowes are to be regarded as "passengers for a charge" within the exclusion on the basis of the Court of Appeals having held the Rowes to be "passengers for hire." To the contrary, counsel for the Rowes contend that the exclusion would not apply in the absence of payment of a cash consideration in fact by the Rowes.

There is no question that the Rowes were "passengers for hire" as this status was awarded them by the Court of Appeals on the basis of their position as prospective purchasers of the boat. 329 F.2d 35, 44 (4 Cir., 1964). The issue rather revolves around whether the terms "passengers for hire" and "passengers for a charge" are synonymous in an insurance coverage context.

At the commencement of the discussion of this issue, it is noteworthy that no case directly in point has been submitted by counsel, nor uncovered by the independent research of the Court. However, several authorities which bear upon the subject deserve consideration.

Two fairly recent opinions of the Virginia Supreme Court of Appeals dealing with "payment" by an automobile passenger are of some significance. In Dickerson v. Miller, 196 Va. 659, 85 S.E. 2d 275 (1955), the Court found that the occupant had the status of a passenger as opposed to a mere guest where the driver was transporting the occupant to her home in consideration of the occupant having worked late as an employee of the driver at his place of business. The court stated (196 Va. 662, 85 S.E.2d 277):

> "With respect to *'payment'* it is not necessary that the operator of the vehicle receive actual cash in return for the transportation supplied, since services or other benefits given by the occupant, if regarded by the parties as consideration inducing the offer of transportation, may be sufficient to entitle the occupant to the status of a paying passenger, as distinguished from a guest passenger." (Emphasis added)

Similarly, the Supreme Court of Appeals of Virginia in Richardson v. Charles, 201 Va. 426, 111 S.E.2d 401 (1959), found the plaintiff to be a passenger rather than a guest where a car salesman was transporting him because the car he had purchased was not ready as promised by the salesman. The court quoted from 5-A Am.Jur., Automobiles and Highway Traffic, § 520, p. 559 (1956) as follows (201 Va. 426, 429, 111 S.E.2d 401, 403):

> "*Payment* for transportation need not be made in money; it is sufficient that the owner or operator is compensated in a substantial or business sense as distinguished from mere social benefit or nominal or incidental contribution to expenses. *Payment* may be an anticipated or

---

**2.** As the use of the past tense here has not been pressed by counsel for the Rowes, the Court assumes that it appears through typographical error and that the word should be "excludes".

prospective profit, or any return making it worth while to furnish the ride. The *guest statute* was not intended to deny a right of action for injuries suffered through negligence of the owner or operator of an automobile by one who is being transported for the benefit of the owner or operator, or for the benefit of both the passenger and the owner or operator." (Emphasis added)

It is obvious that the language in these opinions deals with "payment." It is also acknowledged that "payment" is closely analogous to "a charge." However, it appears significant to this Court that the discussion of "payment" in the above opinions is in regard to the use of that word in the Virginia automobile guest statute. Va.Code Ann. 8–646.1 (Repl. vol. 1957). This statute requires a finding of gross negligence on the part of the driver in order to hold him liable to a person transported as a "guest without payment for such transportation." This Court does not regard the construction of "payment" in regard to the guest statute as controlling in the construction of "charge" in the policy exclusion, as the former construction is of a narrow application, having been arrived upon for a particular purpose as will be discussed *infra.*

Counsel for U. S. F. & G. place heavy emphasis upon Cartos v. Hartford Acc. & Indem. Co., 160 Va. 505, 169 S.E. 594 (1933). In that case there was evidence that the occupant of the automobile in fact made a payment for transportation. Thus, such occupant was held to be within the "passenger for a *consideration*" exclusion of the insurance policy. In discussing the policy exclusion, the court stated (160 Va. 505, 516, 169 S.E. 594, 597):

"This, in the ordinary acceptation of the language of this provision, means that no risk is assumed by the insurer for injuries inflicted by the owner or operator of the car while it is being used for the transportation of persons under such conditions that the operator of the car owes to the person who is being transported the duty of a person who is carrying another *for hire.*

"The duty owed by the operator to a person being transported for hire is much higher than that owed to a person who is not being transported *for hire*; and the risk assumed by the insurer where a car is being so used is much greater than in the case of an automobile which is being used for pleasure and ordinary business purposes." (Emphasis added)

Thus the Supreme Court of Appeals apparently equated the terms passengers "for a consideration" and "for hire." Furthermore, implicit in the second quoted paragraph is that the standard of care owed to an occupant, rather than the nominal classification given him, is the dominant factor in determining whether such occupant falls within such a policy exclusion. Therefore, from the viewpoint of U. S. F. & G., the higher degree of care owed to the Rowes as "passengers for hire" would place them within the category of persons intended to be included within the policy exclusion. However, it appears to this Court that this argument ignores the specific language of the policy exclusion here in question.

Myers v. Ocean Acc. & Guarantee Corp., 99 F.2d 485 (4 Cir., 1938) gives support to a broad interpretation of an exclusion clause regarding "persons for a consideration." The passengers there were held to be within such category where they had in fact paid. They were thus excluded from recovering from the insurer despite their contention that the exclusion should not apply since this was the only occasion when the automobile was being so used. The Court of Appeals was not willing to limit the effect of the exclusion only to where the vehicle was habitually used for the excluded purpose. While this case is authority for the quantitative factor as to the application of such an exclusion, it is not particularly helpful in regard to the qualitative factor with which the Court is here concerned.

Although not involving the term "charge", Orcutt v. Erie Indem. Co., 114 Pa.Super. 493, 174 A. 625 (1934), lends support to the position of U. S. F. & G. The court there held that where payment was in fact made, the occupant came within the exclusion "for rental, hire or livery or the carrying of passengers for a consideration." In the course of the opinion the court used "compensation" and "hire" interchangeably, and also stated as follows (174 A. 625, 626):

> "The provision in the policy that no liability was assumed while the automobile was being operated for the carrying of passengers for a consideration is plain and unambiguous, and is a reasonable one. This insurance company had one rate for pleasure vehicles and vehicles operated by the owner for his own use and another higher rate where automobiles were operated for hire, and, if the insured desired to embark in the more hazardous business, it was his duty to secure a different policy and pay the higher rate."

The foregoing, like Cartos, supra, supports the position that the degree of care owed determines whether the plaintiff is within the exclusion. As with Cartos, this Court feels that such theory ignores the policy language as applied to the facts of the present case. Furthermore, the interchangeable use of "compensation" and "hire" is not authority for a similar substitution of "charge." This view also applies to the interchange of "consideration," "compensation" and "hire" as stated in Neilson v. American Mut. Liab. Ins. Co., 111 N.J.L. 345, 168 A. 436 (N.J.Ct.Err. & App., 1933).

Two other cases cited by counsel for U. S. F. & G. offer little to clear up the issue. In Jarvis v. Indemnity Ins. Co. of North America, 227 Or. 508, 363 P.2d 740 (1961), plaintiff had recovered from the insured in the original action on the theory that the latter had done certain "touring for hire" for the plaintiff. In the subsequent suit against the insurer, the plaintiff's claim was held to be within the policy provision excluding liability for loss incurred while touring was done "for hire." The court did not enter into more than a summary discussion of the policy provision. The case is not illuminating here since identical terms were therein involved, whereas in the present case the problem arises because of different terminology.

In Rose v. Chapman, 19 Wash.2d 744, 144 P.2d 248 (1943), where plaintiff had paid for gasoline he was held to be within the exclusion of "carrying persons for a charge." On appeal, appellant argued that the trial court erred in finding he was a "passenger for hire." The Supreme Court of Washington overruled this contention but did not discuss same in any detail. It simply found that appellant fell within the exclusion and did not specifically classify her as a passenger for "hire" or for "charge" and thus did not necessarily equate these terms. Furthermore, where an amount is in fact paid, it would be apparent that the payor would fit into either classification.

Another authority which appears to support the equation of "for hire" and "for a charge" is Burgess v. Holder, 362 Mich. 53, 106 N.W.2d 379 (1960). However, like Rose, supra, this case involves a payment in fact. In the action against the insured, plaintiff was found to be a "passenger for hire." When the judgment therein recovered was not satisfied and suit was brought against the insurer, the court was confronted with a policy exclusion reading "while the automobile shall be rented or used for the transportation of passengers for a specific charge." The Michigan court held that the plaintiff was estopped to take inconsistent positions. She could not claim not to be a passenger for a "specific charge" when she had in fact paid a definite amount. Again, the payment in fact would support either classification.

Moreover, the thrust of the argument of U. S. F. & G. on this issue is as follows: the object of the policy exclusion was to exclude the risk which involved the higher standard of care; the Court of Appeals found the Rowes to be within the class owed the higher standard of

care; therefore the difference in terminology between the classification of the Court of Appeals and that of the insurance policy exclusion should be ignored since the same theory obviously does not place significance upon the specific language of the policy exclusion, which language this Court feels to be of utmost importance.

Examining the language of the policy exclusion, the exclusion was to apply to "boats while used to carry passengers *for a charge* or while rented to others." Taking these words at face value, there is no contention by U. S. F. & G. that there was any "charge" levied or paid for the boat ride, or that the boat was under any type of rental or lease to the Rowes. Thus the Rowes would not fit into the words of the exclusion as they would be understood by the ordinary layman-insured.

Nonetheless, assuming arguendo that the language of the exclusion is not clear on its face and therefore is ambiguous and thus subject to construction by the court, it still appears that the contentions of U. S. F. & G. must fail. Applying the familiar rule of construction that ambiguities are to be construed strictly against the insurance company which authored the terminology, it is apparent that the language here contemplated a payment in fact, rather than a payment in law as was found by the Court of Appeals to have been made.

None of the cases relied upon by U. S. F. & G. to bring the Rowes within the "for a charge" language involve only a payment *implied in law* as exists in this case. To the contrary, all of those authorities finding the passenger to be within the exclusion involve a payment *in fact* made by the passenger. At least in the absence of identical language in both (1) a determination that a party is a passenger on the basis of payment implied in law and (2) a policy exclusionary clause, this Court does not consider the former binding upon the latter.

Furthermore, the finding of the Court of Appeals that the Rowes were "passengers for hire" is of limited control due to the fact that the Rowes were awarded this status on the basis of the definition of "passengers for hire" contained in 46 C.F.R. 24–10–3 which defines the terms as follows:

> "The carriage of any person or persons by a vessel for a valuable consideration, whether *directly* or *indirectly* flowing to the owner, charterer, operator, agent or any other person interested in the vehicle."
> (Emphasis added)

This definition thus opened the door for the application of the prospective purchaser theory with its indirect benefit to the owner, which in turn rendered the Rowes "passengers for hire." On the other hand, the policy provision "passengers for a charge" is more restrictive and carries no implication that an indirect benefit is to be included.

Moreover, this Court is not persuaded to find the Rowes to be within the policy exclusion on the basis of the theory of the prospective purchaser cases. These authorities are centered upon the automobile host-guest statutes and do not directly involve insurance coverage. The unexpressed desire of the courts to compensate an injured party where legally possible to do so has caused the courts to construe those statutes as to "compensation" or "consideration" liberally, thus being reluctant to find an occupant to be a guest and conversely free to find him to be a passenger. On the other hand, that same desire of the courts dictates a strict construction of this type of insurance policy exclusion, the courts being reluctant to find an occupant to be a passenger "for a charge." These conflicting approaches seriously weaken the application of the host-guest statute analogy to an insurance provision.

The difference in approach has been established by several authorities. In Pietrantonio v. Travelers Ins. Co., 282 Mich. 111, 275 N.W. 786 (1937), the plaintiff had recovered a judgment in his original action against the estate of the driver of the car on the theory that the car was being demonstrated to him and therefore he was not a guest. In the

subsequent suit against the insurer, the insurer claimed that the plaintiff was estopped from taking the position that the car at the time of the accident was not being used in the "business of demonstrating," which would be excluded under the policy. The Michigan court held that there was no estoppel. This decision was grounded upon the court's refusal to apply the exclusion in this situation which was the only time the car was being so used. Contra, Myers v. Ocean Acc. & Guarantee Corp., 99 F.2d 485 (4 Cir., 1938), supra, as to sufficiency of a single use for application of exclusion. However, the Michigan Supreme Court further held that the plaintiff could not be considered a "passenger for hire" under the exclusion. This contention was summarily dismissed without any enlightening discussion by the court. Burgess v. Holder, 362 Mich. 53, 106 N.W.2d 379 (1960), supra, is distinguishable from *Pietrantonio* since in *Burgess* a payment in fact was made.

A case which is close to the one at bar is Western Machinery Co. v. Bankers Indem. Ins. Co., 10 Cal.2d 488, 75 P.2d 609 (1938). There the insured was suing his insurer for indemnity. A prospective purchaser of the insured's *machinery* was injured in the insured's car due to the negligence of an employee of the insured while returning from inspecting insured's products. The policy contained a declaration that "none of insured automobiles are or will be used to carry passengers for a consideration, actual *or implied*." Insurer contended that inasmuch as the prospective purchaser was not a guest within the California guest statute, he therefore became a passenger for a consideration within the meaning of the policy provision. The insurer sought an interpretation of "consideration" as used in the policy clause as any "compensation" which is "given for the ride" within the provisions of the guest statute. However, the Supreme Court of California held that the exclusion did not apply, and thus the injury was covered by the policy.

The California court there relied upon two interrelated cases decided by the Supreme Court of Washington. In Dahl v. Moore, 161 Wash. 503, 297 P. 218 (1931), that court held that the plaintiffs, who were riding in Moore's car for the purpose of inspecting real estate offered for sale by Moore's employer, were not gratuitous passengers but rather were entitled to recover for injuries suffered through Moore's ordinary negligence. Then in Central Sur. & Ins. Corp. v. London & Lancashire Indem. Co., 181 Wash. 353, 43 P.2d 12 (1935), action was brought to recover on Moore's policy. The question presented was whether the automobile was being used for the "carriage of passengers for a consideration, express *or implied*." The same court held that the facts did not fall within that phrase.

Perhaps the most succinct statement on this issue is found in State Farm Mut. Auto Ins. Co. v. Superior Court of California, 47 Cal.2d 428, 304 P.2d 13 (1956). There the insurer sought a writ of mandate to require the court to sever the insurer's declaratory judgment action from the personal injury action brought by a third party against the insured. The insurance policy excluded coverage where the vehicle was used for "carrying persons for a charge." The Supreme Court of California held that the consolidation was improper since in the declaratory judgment action the insurer wanted to prove the riders were passengers "for a charge" whereas, in defending the insured, the insurer wanted to prove these riders were guests within the guest statute. Recognizing that the tests for determining these issues would not be the same, the court stated (304 P.2d 13, 15):

"A person may be a traveler for 'compensation' under the guest law but not necessarily a 'passenger' for 'consideration' or 'for a charge' under an insurance policy."

This Court is in accord with this line of reasoning.

 In summary, no case has been submitted or found which even indicates

that a prospective purchaser of a boat or vehicle is to be regarded as a passenger "for a charge" within such an insurance policy exclusion. Furthermore, this Court is of the opinion that cases finding the implied-in-law consideration given by a prospective purchaser sufficient to take such party out of the guest category in regard to an automobile guest statute are not controlling upon that party's status in regard to the construction of an insurance policy. This Court is of the opinion that the exclusion here in issue required a payment in fact. It is therefore held that the Rowes were not "passengers for a charge" as that term is used in the insurance policy exclusion. Thus coverage is provided to the Rowes by the Brooks and Carr policy. This conclusion is in accord with the intention of Brooks and Carr and U. S. F. & G. to provide coverage for boats left by Brooks and Carr at the Powhatan Marina for demonstration purposes, as stated in the discovery of the agent for U. S. F. & G., G. T. Brooks, who negotiated the policy with Brooks and Carr.

### (2) The Duty to Defend the Hodges under the Brooks and Carr Policy.

The intervenors in this action, who are private attorneys, represented the Hodges in the original action brought against them by the Rowes. It is contended here that U. S. F. & G. had a duty to defend the Hodges under the Brooks and Carr policy and that, having failed to do so, U. S. F. & G. is liable to the intervenors for their fees and costs which total $12,-792.48. The question now under consideration is the alleged duty of U. S. F. & G. to defend the Hodges under the Brooks and Carr policy; the alleged duty to defend under the Hodge policy will be dealt with *infra*.

■■ The alleged duty to defend is grounded upon the allegations in the Rowes' pleadings that the Hodges were acting as agents for Brooks and Carr and upon the fact that the Court of Appeals held the parties to be engaged in a joint venture. However, at the outset it should

be realized that while an insured may be vicariously responsible for the negligent acts of his agents or joint venturers, the insurer's *duty to defend an action against one other than a named insured* is not controlled by the ultimate liability of the insured or the insurer on the merits of the case. Instead, the duty to defend is controlled by the policy provisions in the absence of an express statute to the contrary.

Under "Insuring Agreement II," U. S. F. & G. obligated itself to "defend any suit against the Insured" alleging an injury within the policy coverage. The injuries to the Rowes have been determined to be within such coverage. Thus the duty to defend rests upon whether the Hodges are considered to be "insureds" under the policy.

The pertinent provisions of "Insuring Agreement III," headnoted "Definition of Insured," read as follows:

"The unqualified word 'Insured' includes the named Insured and also includes (1) under Coverages A [Bodily Injury Liability] and C [Property Damage Liability—Except Automobile], except with respect to the ownership, maintenance or use of automobiles while away from premises owned, rented or controlled by the Named Insured or the ways immediately adjoining, any executive officer, director or stockholder thereof while acting with the scope of his duties as such, and any organization or proprietor with respect to real estate management for the Named Insured, and if the Named Insured is a partnership, the unqualified word 'Insured' also includes any partner therein but only with respect to his liability as such. * * * *"

Division (2) of this "Insuring Agreement III" is not applicable here since it involves the Virginia omnibus provisions which pertain only to a "motor vehicle" by the terms of the statute, Va.Code Ann. 38.1–381 (Repl. vol. 1953), as well as by the terms of the policy itself. A motorboat is not a "motor vehicle" encom-

passed by the statute [3] or the policy. Moreover, the provisions of the policy which are stated to be applicable to automobiles do not extend the same coverage to boats.

It is obvious from a reading of the above-quoted definition of "Insured" that the duty to defend does not apply to agents or joint venturers of the "Named Insured." Furthermore, the discovery deposition of John T. Wassom, the Superintendent of Claims for U. S. F. & G., clearly states that no coverage for the Hodges was contemplated under the Brooks and Carr policy. Under these circumstances it is hereby held that U. S. F. & G. did not have a duty to defend the Hodges under the Brooks and Carr policy. Accordingly, the claims of the intervenors in this action must be denied as to the Brooks and Carr policy.

### The Hodge Policy.

The two issues which arise under the Hodge policy are: (1) Did this policy afford coverage to the Hodges for the Rowe accident? (2) Was there a duty on the part of U. S. F. & G. to defend the Rowes' suit against the Hodges under the Hodge policy? It is the opinion of the Court that both of these questions must be answered in the negative.

(1) *Coverage under the Hodge Policy.*

■ This policy was obviously written to cover the general business of the Powhatan Marina for comprehensive general liability. One of the categories under "Description of Hazards" was "Premises—Operations" which was subdivided into four hazards identified as follows:

Picnic Grounds—Commercially Operated

Boat Ramp

Docks for Floats used in Lieu of Docks

Private Residences—N.O.C. Additional Residences

None of these enumerated hazards appear to apply to boats. However, a footnote to the "Description of Hazards" states that "premium for insured hazards not specifically rated herein will be determined by audit and accordingly charged" and thus appears to open the door for further coverage. But this door is quickly closed since there were no premiums charged in addition to those for the above-enumerated hazards and, moreover, the "insured hazards not specifically rated herein" are confined to (1) elevators, (2) independent contractors, and (3) "Contracts as defined in Condition 3." The latter category is considered in footnote 4, infra. It is well settled that joint ventures do not occupy the relationship of "independent contractor" *inter sese*. The requisite control exercised by joint venturers negates the independent contractor relationship. Miller v. Query, 201 Va. 193, 110 S.E.2d 198, 82 A.L.R.2d 912 (1959); Perlick v. Vick, 246 F.2d 144 (4 Cir., 1957).

While the coverage of boats is not indicated by the hazards described in the policy, such coverage in regard to the accident here under consideration is put in focus by the following provision:

"This policy does not apply:

"(c) except with respect to operations performed by independent contractors and except with respect to liability assumed by the Insured under a contract as defined herein, to the ownership, maintenance, operation, use, loading or unloading of (1) watercraft if the *accident occurs away from premises owned by, rented to or controlled by the Named Insured*, except insofar as this part of this exclusion is stated in the declarations to be inapplicable * * *." (Emphasis added)

■■ The exceptions as to independent contractors and liability assumed un-

---

3. § 38.1–381 was amended in 1964 to specifically provide that the omnibus insurance provision would be applicable to private pleasure vessels, ships, boats or other watercraft. Va.Code Ann. § 38.1–381 (Supp.1964). However, such coverage was not required at the time of the issuance of the policy to Brooks and Carr, the time of the accident here involved, or the time of the trial of the Rowes' suit against the Hodges.

der · contract are not applicable here.[4] Thus the issue turns upon whether the *accident* occurred on premises owned by, rented to or controlled by the named insured, William E. Hodge.

The facts establish that the collision of the boats occurred approximately one-fourth of a mile from the Powhatan Marina. Is this location to be considered as a part of the marina premises? The issue obviously depends upon the scope of the word "premises" as used in this policy.

Counsel for the Rowes place primary emphasis upon St. Paul Fire & Marine Ins. Co. v. Coleman, 316 F.2d 77 (8 Cir., 1963), cert. den. 375 U.S. 903, 84 S.Ct. 191, 11 L.Ed.2d 143 (1963). Counsel contend that this case provides authority for finding the accident to have occurred on Hodge's premises. The Court cannot agree with that contention.

In that case the insured was the operator of a marina, as was Hodge, and brought a declaratory judgment action to determine the liability of his insurer in regard to an accident for which the insured had been adjudged liable in a previous suit. The boat belonging to the party who was the plaintiff in the original suit against the insured marina operator docked at the marina for refueling. It was alleged that insured's employee was negligent in the refueling operation. After the refueling was completed, the boat started moving away from the dock, but the engine was not functioning properly and soon entirely ceased to operate. The boat drifted without power 73 feet from the dock where it caught fire and burned adjacent to and immediately in front of the dock. A dock employee was preparing to go to the assistance of the boat when it caught fire.

The marina's liability policy contained certain hazards insured against which were before the Court. Under the "Definition of Hazards" "Division 1" was "Premises—Operations" which was stated to cover "the ownership, maintenance or use of premises, and all operations." In the Declarations, the "Premises—Operations" hazard was defined as follows:

> Boat Yards—Public—including sale of boats, accessories, gasoline and oil, boat building and repair.
>
> Code 2464
>
> Boat storage and moorage including ship or docks rental. Code 3493
>
> Building or premises—mercantile or manufacturing, not occupied by the insured—NOC—(Lessor's risk only). Code 129

"Division 4" was headed "Products—Completed Operations" and was found by the United States Court of Appeals for the Eighth Circuit to contain an exclusion applicable—

> "[I]f the accident occurs after possession of such goods or products (i. e. those 'manufactured, sold, handled or distributed by the Named Insured') has been relinquished to others * * * and if an accident occurs away from premises owned, rented or controlled by the Named Insured * * *."

The district court held that the accident was covered by the policy, stating that "[u]nder these facts the court cannot say that the accident occurred away from the premises owned, rented or controlled by the insured." St. Paul Fire & Marine Ins. Co. v. Coleman, 204 F. Supp. 713, 722 (W.D.Ark.1962). Looking initially only at the opinion of the district court, it is apparent that the factual situation of the *Coleman* case is distinguishable from the one at bar. In

---

4. This conclusion is not reached by the mere fact that no premium adjustment was ever made. The premium, if due, could still be charged. Imperial Casualty & Indemnity Co. v. Relder, 308 F. 2d 761, 766 (8 Cir., 1962). The basis of this ruling is that a join venture contract, implied in law, does not fall within the definition of "Contracts" as set forth in Condition 3, in that such a joint venture contract is not (1) a lease of premises, (2) an easement agreement, (3) an agreement required by municipal ordinance, (4) a sidetrack agreement, or (5) an elevator or escalator maintenance agreement.

*Coleman* the boat was 73 feet from the dock, whereas in the present case the boat was approximately one-fourth of a mile or 1,320 feet from the dock. Additionally, in *Coleman* the boat had simply drifted from the dock without power, thus affording more reason to find it on the premises of the marina since the location was determined by the movement of the waters, whereas in the present case the boat was intentionally piloted from the marina area. The *Coleman* court found that the insured had on occasion moored boats of customers at points more distant from the docks than was the location of the boat in question. Also it was found to have been the intention of the parties to cover accidents, the cause of which originated at the fueling dock and culminated in damage before the boat departed from the premises used by the insured in the operation of the business. Id. 204 F.Supp. at p. 721. Moreover, in finding a location 73 feet from a dock to be within the premises of the marina, the court stated:

> "The term ('premises') may or may not include land or buildings, or land adjacent to the buildings, but certainly includes water *adjacent to* structures designed to service boats using the lake, particularly when the water is a necessary means of ingress and egress to the buildings or structure." (Emphasis added)

On appeal, the insurer argued that the only coverage applicable to the accident was the "Products—Completed Operations" hazard and that there was in fact no coverage thereunder since the accident had not occurred on the insured's premises. In answer, the insured conceded that there was no coverage under the "Products—Completed Operations" hazard. Instead, the insured contended that the negligence of his employee in the refueling operation was a hazard within the ambit of the "Premises—Operations" coverage. The Court of Appeals held for the insured and stated clearly that its decision did *not* depend upon finding the accident to have occurred on the insured's premises:

> "We do not believe that the place where the Stover boat was located when it caught fire as a result of Agar's negligence, is decisive of appellant's liability coverage under the facts here and the insuring provisions of its policy.

> \* \* \* \* \* \*

> "We need not sound out the 'area' of Coleman's business operations as Judge Miller apparently did. All we here note is that the 'location of all premises owned, rented or controlled by the Named Insured' is not defined in appellant's policy. *From the facts in the case at bar,* a reasonable inference can be made that the policy as issued was intended to cover all of Coleman's business 'operations'; and that appellant knew or should have known that he 'used' the waters of Lake Hamilton where the fire occurred, in the operations of his business and had a right to do so. *Regardless,* the place where the fire 'occurred' is *not* here controlling under the 'Premises—Operations' coverage afforded by appellant's policy." (Emphasis added)

The Court of Appeals distinguished the respective coverages under "Products—Completed Operations" and "Premises—Operations." In the policy's definitions of hazards as related to "Premises—Operations" the hazards insured thereunder related to "the ownership, maintenance or *use* of premises, and *all operations.*" The court ruled that it was thus established that the term "all operations" was intended to include "activities" performed in relation to "use of premises" by the insured in relation to his business operations, which included, by definition in the policy, the sale of gasoline. Thus the court held the policy applied under the operations segment of the "Premises—Operations" hazard. Since there was no exclusion as to off-the-premises occurrences under this hazard, it was not necessary to find that the covered event in fact occurred on the premises. Therefore, the Court of Appeals' decision does not find that a site just 73 feet from the

dock is within the premises of an insured marina.

A second case strongly relied upon by counsel for the Rowes is Southwestern Indem. Co. v. National Sur. Corp., 277 F.2d 545 (5 Cir., 1960). There the plaintiff sued to recover one-half of its expenses in the settlement of personal injury actions against the mutually insured party. These injuries occurred when an automobile collided with the insured's fuel truck which was parked on a highway where it was fueling a road grader. The insured was rebuilding the highway under a contract with the State of Texas, which contract provided that "[u]ntil the acceptance of the work by the Engineer, as evidenced in writing, it shall be under the charge and care of the contractor." The plaintiff had a standard automobile liability policy in effect on the truck. The defendant had in effect a "premises—operations" liability policy. Two portions of the latter policy were particularly pertinent: the description of hazards in the declarations were found by the court to "clearly include" the rebuilding of the highway in question; secondly, there was an exclusion in regard to automobiles while away from premises "owned, rented or controlled by the Named Insured" or the ways immediately adjoining the same. The issue before the court was whether the highway upon which the collision occurred was "controlled" by the insured. The court held that it was so controlled, and thus coverage was provided.

The Southwestern case is readily distinguishable from the present case. In the former the "control" was established by both the terms of the insured's contract with the State of Texas and the inclusion of the highway rebuilding within the policy definitions of hazards. Both of these items limited the area involved; there was no finding or contention that the insured controlled any part of the public road other than that defined by the contract and policy.

Reliance is also placed by counsel for the Rowes upon American Employers Ins. Co. v. Goble Aircraft Specialties, Inc.,

205 Misc. 1066, 131 N.Y.S.2d 393 (App. Div.1954). There a boating accident occurred several miles away from the insured marina. The policy provided that it was not applicable "to watercraft while away from premises owned, rented, or controlled by the named insured." The court held that the accident was not thereby excluded. However, the holding of the court does not extend the scope of "premises" to a point distant from the marina, as evidenced by the following statements (131 N.Y.S.2d 393, 399):

> "Exclusion (b) eliminates coverage for *hazards* arising from the use of watercraft away from the premises. It does not take from such coverage *accidents* occurring on watercraft away from the premises, since the hazard and not the accident is excluded. The negligence alleged in the wrongful death action complaint includes failure properly to maintain and control the premises. The word 'premises' encompasses watercraft berthed thereat. One of the wrongful acts charged is the dispatch of the boat *from the ship* despite adverse weather warnings. If this could be proven and causal relationship established, it is of no import where the resulting accident took place, because the negligence charged is within the hazard insured."

Such reasoning is not applicable to the present case since the exclusion here is cast in terms of the *"accident"*, rather than the *hazard,* occurring off the premises of Hodge.

In Long v. London & Lancashire Indem. Co. of America, 119 F.2d 628 (6 Cir., 1941), the insured was protected by a public liability policy covering liability resulting from accidents at a named location and "ways or premises immediately adjacent thereto." The insured's dog ran off insured's property chasing a motorcycle ridden by a policeman and collided with the motorcycle at a point 60 feet from the nearest point of insured's property immediately adjacent to the street. In a suit by the insured for indemnity of his expenses in settling the claims of the

injured policeman, the court held that there was no coverage since the *locus quo* of the accident was not on a way immediately adjacent to the insured's premises.

Another "premises—operations" hazard was involved in Citizens Cas. Co. v. L. C. Jones Trucking Co., 238 F.2d 369 (10 Cir., 1956). Similarly also, the policy contained an exclusion as to automobiles or the loading or unloading of the same except upon premises owned, rented or controlled by the insured. The insured was engaged in the oil field trucking business. Under a contract with the purchaser of a particular drilling rig, insured was to move the rig to the drill site and place it in a position for the purchaser to secure it in place for drilling. On the way to the drill site a piece of equipment fell from insured's truck and injured an employee of the purchaser of the rig. The appellate court affirmed the opinion of the lower court that the accident occurred on premises which were not owned, rented or controlled by the insured. However, it is to be noted that the premises were affirmatively shown to be under the supervision and control of the drilling contractor, and such finding was an obstacle to a ruling that the insured controlled the premises.

Another case in support of a strict construction of "premises" is United States v. Great American Indem. Co., 214 F.2d 17 (9 Cir., 1954). The Government owned the building and leased areas therein to private interests, each of which was to carry liability insurance covering its premises and the "ways immediately adjoining." A person fell on the ground floor at a point two or three feet in front of the entrance to the mezzanine stairway, which point was 35 feet west of the nearest entrance to a ground floor grocery store and several feet west of the nearest corner of the store. The sidewalks and stairways were under the control of the Government. The court held that the grocery store's policy did not cover the fall as the fall did not occur on "ways immediately adjoining" the grocery store premises.

As to the "control" of premises, it has been held that where insured's gasoline truck was delivering gas to a farm and caused damage to a house on the premises of the farm, the insured could not be held to control the farm premises. Thus the carrying on of a business operation on certain premises did not establish control over the same. The accident was excluded from coverage, not having occurred on the premises of the insured oil company. Farmers Union Oil Co. v. Central Sur. & Ins. Corp., 256 F.2d 603 (8 Cir., 1958).

■ This Court holds that the location of the collision of the boats was not on premises owned, rented to or controlled by Hodge. It is only necessary to find that the site on a creek approximately one-fourth of a mile from the marina dock is not on the marina's premises; it is not necessary to make a determination as to lesser distances. It appears that to hold a point one-fourth of a mile away from the nearest marina dock to be a part of the marina premises would open the door for a similar finding in regard to almost any point away from a specified location. Indeed, it appears that such a finding would have to be based upon the "operations" aspect rather than the scope of "premises." However, the exclusion here clearly involves "premises" and it is that term which would have to be interpreted rather than "operations." Additionally, it is worthy of note, although by no means controlling, that the parties did not intend to cover boats under the Hodge policy in question as evidenced by the testimony of the agent, G. T. Brooks, who advised his principal that Hodge did not own any boats for rental purposes. When the policy in question was renewed, boat coverage was provided in consideration of an additional premium. In sum, since the accident occurred away from premises owned by, rented to or controlled by Hodge, the exclusion applied and no coverage was provided by the Hodge policy for the Rowes' accident.

*(2) Duty to Defend the Hodges under the Hodge Policy.*

Since it has been determined that there was no coverage available to the Hodges under the Hodge policy, there was no duty on U. S. F. & G. to defend the suit of the Rowes against the Hodges. A groundless or frivolous suit is to be distinguished from one for which no policy coverage is afforded. In the former category, coverage is available if the claim against the insured can be established; this type of suit must be defended by the insurer. However, in the latter category *no* coverage is available even if the claim can be proven; there is no duty on the insurer to defend this category of suit. The Rowes' claim against the Hodges fell within the latter category in regard to the Hodge policy. Thus there was no duty on U. S. F. & G. to defend. Consequently, U. S. F. & G. is not liable to the Hodges' counsel in that suit for their fees and costs.

*Liability of U. S. F. & G. for Interest on the Rowes' Judgments.*

The liability of U. S. F. & G. for interest on the Rowes' judgments is controlled by the terms of the policy which afforded coverage, i. e., the Brooks and Carr policy. Under "Insuring Agreement II" it is stated that U. S. F. & G. shall pay—

"[A]ll interest accruing after entry of judgment until the Company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon."

Thus, U. S. F. & G. is liable for interest on the entire judgment entered against Brooks and Carr, i. e., $93,250.00, from August 23, 1963, when that judgment was entered by this Court, until U. S. F. & G. complied with the above-quoted policy provision. Wilkerson v. Maryland Casualty Co., 119 F.Supp. 383 (D.C.Va.1953), aff. sub. nom. Maryland Casualty Co. v. Wilkerson, 210 F.2d 245 (4 Cir., 1954). On September 11, 1964, U. S. F. & G. deposited in this court $50,000.00, the maximum principal coverage under the Brooks and Carr policy, it being specifically provided that such deposit was without prejudice to the rights of U. S. F. & G. in regard to its alleged liability. Subsequently, on December 10, 1964, U. S. F. & G. deposited in this court $6,838.30, which amount U. S. F. & G. asserted to be the interest due on the judgment. It appears that this figure was arrived at by computing the interest from August 23, 1963, until November 12, 1964, upon which date a hearing in this case was held in this court and it was suggested by the Court that interest on the aggregate of the judgment claims may have been legally due and should have been deposited. The Court finds that U. S. F. & G. is liable for interest to December 10, 1964. It is accordingly held that U. S. F. & G. should pay such additional amount by way of interest on $93,250.00 as would have been necessary to pay as of December 10, 1964, plus interest on the additional amount due by way of interest at six per centum (6%) per annum until actually deposited into court, in full and complete discharge of its liability on the judgment against Brooks and Carr. As the money so deposited was invested pursuant to an order of court, and as said funds have now been declared due and owing to the Rowes as judgment creditors, the judgment creditors are entitled to the benefit of the funds invested under the court order.

*Conclusion*

An order may be submitted granting the Rowes' motion for summary judgment as to the Brooks and Carr policy with the interest thereon as aforesaid; denying the Rowes' motion for summary judgment as to the Hodge policy; granting the motion for summary judgment of U. S. F. & G. as to the Hodge policy; denying the motion for summary judgment of U. S. F. & G. as to the Brooks and Carr policy; denying the motions for summary judgment of the intervenors; and granting the motions for summary judgment of U. S. F. & G. as to the claims of the intervenors.

Since U. S. F. & G. did not deposit the money in court in the nature of a true interpleader, thereby permitting the judgment creditors to withdraw same, the costs of these actions will be assessed against U. S. F. & G.